Go ahead and get started. Case number 21-10966, United States v. Alkheqani. I'm sorry, I don't know how to pronounce it, so I'll defer to Elizabeth Emanuel on that. Thank you, Your Honor, and may it please the Court. My name is Liz Emanuel, and I represent Mr. Alkheqani. I'm joined this morning by Philip Linder, who is my co-counsel on this appeal. This is my first time appearing before this Court, and it's truly an honor, so thank you for holding oral arguments today. Mr. Alkheqani raises several issues in his brief, but with this Court's permission, I'd really like to focus on what I believe is the most salient issue before us today, and that's the question of whether Mr. Alkheqani's sentence under the Armed Career Criminal Act withstands the new test prescribed by the Supreme Court in Wooden. The answer to this question is a resounding no. No, because at most, his prior burglaries constituted just two different occasions, not three and not four. But before it begins counting occasions, the Court must first decide which facts it is allowed to share when applying ACCA. We'll call this the shepherd question. Then the Court must decide whether those facts conclusively prove that Mr. Alkheqani's burglaries occurred on at least three different occasions. And if they do not, the government has not met its burden and his sentence must be vacated. So what do you think the government, if we did that, based on the Wooden test, that there were at least three different occasions, meaning those, I think we can assume that the May 10th or the May 12th burglaries were on one occasion because we actually have no information about timing. And the April 15th and 16th burglaries, though they are separated by date on the indictment, we have no information as to the timing of those offenses. So one could have occurred ostensibly at 1158 p.m. and the next at 1201 a.m.? I appreciate this citation to Wooden, and it is an important case. But it was a case where the burglar was all in one building. So it's not just, oh, it was a, you know, same day, because you could have very different burglaries on the same day. It's just if I'm going boom, boom, boom, boom, they said that's the same. So how far does Wooden take us? Because it's a pretty, I don't know, if they had not found those to be the same, then nothing would ever be the same. So that was a very close bunch of burglaries. Tell us where that, where is that line? Right. Absolutely. And I think, you know, at first glance this might appear to be not an easy case. This might be what the court called a hard case. But I think if you really look at it, this becomes an easy case. Just the same way that Wooden burglarized a unit, one warehouse facility, but ten separate units within that, Mr. Alqaqani could have burglarized two different apartments next door to each other, all within the same apartment building. Or it could have been two units of one duplex. So that's to address your location question. But I think in this case, for example, if the first burglary was indicted on April 15th and the second was on April 17th or 18th, those multiple days would be good enough to show that these were separate occasions. Because that necessarily means that there was a significant gap in time. That it wasn't one string of events. But we don't know that in this case. All the indictments and the conviction documents in this case show is that there was one burglary on or about the 15th, one on or about the 16th, and two on or about May 12th. We don't have any co-defendants from the indictments, and we don't have any addresses. So there are four, but you're counting them as two. Yes, Your Honor. You know there's at least two. The same way Woodin's was ten, but it's one. Yes, Your Honor. And so the Shepard question, I think, is key, and I think I just want to explain that it remains precedent even after Woodin. The panels in Wright and Stevens both affirmed that, and the government would argue that because Woodin prescribed a more holistic inquiry, that judges need to look more into the facts of each case. But the government also correctly points out that Woodin didn't say anything about Shepard. In Woodin, the Shepard documents are particularly robust. They show that everything was located in one storage facility. It describes the type of building. It describes that each unit had a separate victim, owner of the storage unit. It describes how Mr. Woodin broke through each wall in the storage facilities. Of course, we don't have that in this indictment. So, in one way, it wasn't... Are there any other documents out in the world that are not in this record that could demonstrate A or B? In other words, was it 11.30 p.m. to 12.30 a.m., or was it 11 a.m. to the next night at midnight or something like that? In other words, would there be something out there that just wasn't put in this record that could show that? Your Honor, so if we're only talking about Shepard-approved documents, then I'm not aware of any. I've looked at the discovery from the government in the initial case, and there wasn't anything in a particular factual basis or transcript of a plea that would have admitted the timing, or even the addresses, or how they were related to each other. Are you saying you asked for it and there was no... The response was, we don't have anything else? I didn't ask for it, but I looked back at what was originally given over to the initial trial counsel, so I... Do we really know, if it comes back down to the district court, what would be available to the government by way of Shepard documents to fill in the gaps that you say this record reflects? I am not aware that there would be anything. Or wouldn't be. I believe that there would not be. Yeah, so I think vacating the sentence and remanding would be the best solution to this case. Yeah, but I was really kind of asking what the remand is, because if there's no other evidence, then it's a remand to look at what the evidence is. If there is other evidence, he may still get the ACCA, but if there's not, and if you're correct and we end up agreeing with you, then it doesn't sound like a good remand for the government. So, I do think it matters, the questions we're asking about whether there are other documents now, we'll probably ask your opponent that. Yes, that might be better. Now I did want to ask, because Wooden is fairly new, and so we're still learning to use it. So one thing I'm wondering is, if he was walking down Main Street and burglarizing, but he ran out, but then in the next one, he knocked on the door and held up a gun and ran in and stole things, would those be the same? I think there are additional facts that I would ask about, particularly, what was that gap in time? I'm saying there's very little gap in time, but that the method of burglary was quite different. One was just to sneak in, grab a purse, the other was hold a gun and wander this person around and steal their stuff, which are two different burglaries. So I think, though they didn't say it explicitly, I think the government's test, or sorry, the court's test in Wooden really emphasized the timing and location factors more so than the way that the method... And by the way, I'm well aware that could be called a robbery, the second one, but I'm just saying if he was charged with a burglary in both. I'm sorry, go ahead. Right. I think that the way each crime is carried out is not as important to this court or to the court's test in Wooden. So I think because that would still be considered a continuous series of events with one leading to the other, that would probably still constitute one occasion. Even though they were separate methods. Because the court also pointed to one case where there was, I believe, a burglary and then a murder, or a robbery and then a murder. Obviously those are two different ways of carrying out crime and two different crimes. The issue is whether they're intertwined, right? I mean, that's a factor that the court looked at. And you could have a murder and you could have a robbery, and those two things could be intertwined factually, correct? Absolutely. So the method is not necessarily... If you have two different methods, that doesn't exclude the application of Wooden, correct? Correct. I do believe that it was sort of convenient for the court to also point out that in Wooden, he went into each unit to do the same thing. And they sort of included that in their test to explain that that could be one factor tying a series of events together and showing that they all were done for the same purpose. That kind of shows that there was no break in the thinking and the actions, that they were all there to do one thing, and that was to burglarize a storage facility. In the same way that Mr. Alkakani could have been in an apartment building to burglarize it. So I think if we really look at the factors in Wooden, we can compare them one by one to the facts that we know here based on Shepard documents. So for the timing, as I explained, we have no times. We have no times, and in Wooden, of course, they didn't have times, but the indictment showed that everything happened as a series of events. We don't have that information in the indictments on the record. Do you not want to address the conviction at all? Your Honor, no, I would rest on the briefs on that. We acknowledge that this is the more and also the strongest issue for us. And if we agree with you, it would moot out the other issues assigned relative to the sentencing? Is that your position? Yes, that would be my position. I don't believe the court needs to reach the cross-reference issue if it does decide to vacate the sentence on the Acker grounds. And turning back to Wooden and the comparison, of course, I've talked about the location. We have no addresses. The government has said that because each one lists a different victim resident, that necessarily means they were committed at separate locations. But again, it could have been an apartment building. It could have been a condo building. It could have been a duplex. So we don't know the relationship of these different locations. It could have all been one location. And of course, we also don't have the full name of the residents. They're redacted in the indictments. And to the common scheme and purpose, Mr. Alkakani's burglaries involved only the intent to commit theft. So to the extent that that factor matters, it's identical between these occasions. And I think that this case represents an opportunity for this court to delineate what exactly is a separate occasion and what is not, because the 15th and 16th burglaries can easily be identifiable. If we were to do that, we would really be dealing in hypotheticals. The whole point is we don't know. So to draw a rule from the I don't know, you'd have to sort of speculate about this factor and that factor. Is this really the vehicle to pronounce a hard and fast rule as to what the factors are? I don't believe the court needs to do that. But if it wishes to, this could be, because as the court said in a footnote in Stevens, it said that, obviously that was under a plain error review, but it said that the February 18th, and I believe the latter date was three weeks later, that that was clearly enough under Wooden to separate them into two different occasions. So you could use, in the same way, it's about the same gap in time here. And I think that the court in Wooden said that, you know, it noted that one, that crimes committed a day or more apart are often two different occasions. And of course, we are not dealing with that here, but between the 16th and the 12th burglaries, we clearly are. And I think the court can use that to affirm that. And I'll look forward to responding on rebuttal. Thank you. Okay. We have reserved time for rebuttal. Now we'll hear from Brian McKay of the United States. Good morning, Your Honors. Brian McKay on behalf of the United States. I, too, intend to focus my time on the ACCA issue. Happy to let the other issues go to the conference on the briefs. Okay. If we remanded, do you all have any more sheets of paper besides the sheets of paper already in the record? Your Honor, I know that there are judicial confessions involved in this case that are not in the record. And so there are additional documents. But I would submit, too, that there are also additional reliable documents that establish different occasions, things like But that's not a Shepard document. That isn't a Shepard document. A police report? I'm sorry? A police report? A police report is not a Shepard document. And so in my time this morning, there are two overarching points that I do want to make. The first is that the Supreme Court in Wooden, when it explicitly rejected the government's elemental approach to different occasions, what it did is it charted a completely different path than the categorical approach that we're Is that the basis for your suggestion that Wooden somehow overruled Shepard? Yes, Your Honor. If it was going to overrule Shepard, it would have to be a lot more specific than that, wouldn't it? I'm sorry. Let me be clear. It didn't overrule Shepard. What it did is it explicitly overruled Fuller, this Court's decision about what different occasions mean. And Fuller is also where it adopted Shepard for how do we determine what are different occasions. So it explicitly overruled Fuller, saying we don't, that is not what different occasions mean, this chronological elemental approach. And implicitly, I would submit, said that is not how we determine different occasions either. That's the first point I want to make, but really I think the second point may be more important here, and that is that I firmly believe the correctness of the first point, but the Court doesn't have to agree with me on that to affirm here. Because even if we are still under this straitjacketed, you know, reliance on Shepard documents, under this Court's pre-Wooden decisions, the government has discharged its burden to show by preponderance different occasions using the Shepard documents. Okay. What about this argument that you can be out partying on April 15th and it turns into April 16th, and that's the same party. So the April 15 and 16 could be widely disconnected by almost 48 hours, but they could also be widely connected by two minutes. And are you saying the Shepard documents demonstrate which one? Yes, Your Honor. Okay. So tell me specifically how the Shepard document shows that this was not, you know, 1159 to 1201 or whatever. And it doesn't show conclusively that, and if you'll allow me, I first want to take a highlighter to Wooden and emphasize something very important that I think is critical here. And on page 1071, the Supreme Court said two things. They said, first, when we're applying this holistic, multifactored analysis, in many cases, not sometimes, not there will be times when, in many cases, that's the court's words, there's going to be one factor that is going to be decisive in distinguishing between two occasions. And they said especially time and place. So time and place, that alone can rule all other factors. But then immediately the next sentence they said, and when the offenses are separated by a day or more, that's only always different occasions. Now to return to Your Honor Judge Haynes' question, I think for me it became clear where the parties diverge in reviewing the reply. Because I think Mr. Al-Qaqani, what he wants to do is put onto the government a burden to conclusively disprove the same occasion. And that is a burden that the courts never put on the government. If we are to accept his assertion that we're still under this pre-wooden framework about how we prove different occasions, then what we do is we look at cases like United States v. Young, which Mr. Al-Qaqani has relied on in his briefing. We look at Young and the cases that it was built on, Fuller, Barlow, Bookman, Taylor, Owens. We look at those. And what we see there is what the court calls a Barlow burden. And under this framework, it's a two-step framework whereby initially the government has to show, by Shepard documents alone, different occasions by preponderance of the evidence. And I would hearken back to Wooden where the Supreme Court said when they're separated by a day or more, that's nearly always different occasions. And I would submit that when the Supreme Court says something is nearly always true, then I would submit that the government has shown by preponderance that that is true. Now, also I would point out that, and I pointed out in the brief, the court cited approvingly to the United States v. Stearns a First Circuit decision in which there, the First Circuit said, had the occasion of the defendant burglarized the same place, the same victim, two days in a row, and the court said, yeah, that's different occasions. Even though it's animated, I think it was like an insurance fraud scheme or some sort of scheme that animated both of them, but they said, no, that's different occasions. The Supreme Court in Wooden cited like this. Fuller's... But what about, I mean, their argument essentially is that this is an ambiguity because of what I said, that April 15 to 16 can be two minutes apart or, you know, 48 hours apart depending on, roughly, depending on exactly what's going on. So, again, when you're at a party, it might last past midnight. In your mind, that's probably one night, but technically two days. And I don't know that Wooden would say, oh, that's different. Well, I would, I guess, extend on Justice Kagan's examples of the barroom brawl. If somebody walked up to me and said, hey, I was in a fight on Tuesday at the bar, and I was in a fight on Wednesday at the bar, I think, by preponderance, I would say, okay, you were in two fights. And that's what the barlow burden does. The government has to show by preponderance, this is probably two occasions. Hey, humans might run around talking about Tuesday even when it's 12.05 a.m. Wednesday morning that something happened because to them it's Tuesday night. I get that. But when you are charging a crime, they typically give the date. So if it was 12.05 a.m. on Wednesday, that's the date that would be given. It's not given as the prior date. I mean, there's very much carefulness on that, right? Yes. Okay. So the fact that a regular person who's not sitting around drafting indictments is going to say Tuesday night when it's really Wednesday morning, that doesn't prove anything about this, about these two indictments, does it? I would say, I would concede it doesn't conclusively prove, but it certainly shows by preponderance the evidence. In the barlow burden shift that's discussed in, you know, of course, Barlow on a different issue, but Young and Bookman, Taylor, Owens, and all of those cases, the government just has to show by preponderance. And where the government puts forward documents showing different days in every instance, Bookman and Taylor I think are the prime examples, the court has said, okay, the government met its burden, now let's go to the defendant. The second step of the Barlow burden, let's go to the defendant, and the defendant then has a burden to come forward with some evidence, I don't think it has to be Shepard documents, to show otherwise, that it's actually the same occasion. And so when the government has not prevailed in Wright, in Owens, in Young, and in Fuller itself, the government has not prevailed. It's because the Shepard documents show the offenses were committed on the same day. Going to my first point, I think the government can, after Wooden, use additional evidence to differentiate between offenses on the same day, but I'm unaware of any... Okay, so let's talk about this first of all. This hearing, this decision, was made before Wooden, so the district court was not focusing on, oh my heck, I've got to figure out what April 15 and 16 are, okay? Wouldn't it make sense for us to remand just on that? So if you're saying, well, preponderance of the evidence, we have enough, la la la, we're not the fact finders. We review fact finding, absolutely, but we don't make the fact finding. Wouldn't it make sense to send it back and say, okay, fact find in the first instance? Well, to the extent that this wasn't sharpened, I would not say that's the district court's fault because, after all, Mr. Al-Qaqani, all he did was say, judge, these four burglaries, we're going to object, they should be counted as one occasion. So this wasn't sharpened. But to answer your Honor's question, I think, no, I am unaware of any case in which this court has said, when Shepard documents show different days, the government hasn't met its burden to show by preponderance. That would be a first here. Well, but Wooden is a pretty new case, and we're having to figure out how that affects all of this, right? So we must follow the Supreme Court, and we must follow it accurately. And I'm not saying that necessarily changes what you just said, but it is, the Supreme Court doesn't typically take cases just to repeat themselves, okay? So when they come out with a case, we need to pay attention. And that was a 2022 case, and this is 2023, so that's not a long time later, right? Absolutely. Okay, so I don't understand why that isn't something a little bit new, that something we would have perceived as ten different events, they perceived as one. And, well, again, that goes to my first point. I think that that shows, that is what animates my argument as to why we go deeper than Shepard documents. But again, if the court is concerned about what does Wooden mean with respect to if we are sort of in this straitjacketed, you know, reliance on Shepard documents, what did the court say about this that would undermine the government's position? The answer is nothing. It actually reinforces the government's position in the language that I cited earlier. Many times, in many cases, time alone is going to distinguish, and when you show different days, offenses that are separated by day, that's nearly always, and again, unless for the first time, the court puts on the government to show conclusively different occasions. Even by preponderance of the evidence, you're saying two days, but we don't know whether it's 11-59 and 12-01. By simply saying two dates, are you really proving, quote, by preponderance of the evidence, that there are two occasions separated by sufficient amount of time to make it two separate occasions? Yes, Your Honor, I believe so. When the Supreme Court says nearly always, now I understand if— Underline the word nearly. To my point, I was going to make, Your Honor, I think that if it's separated by two weeks, the nearly goes small and the always gets big. If it's separated by one day, then the defense can come forward and say, wait a second, Judge, I understand we have different days, but let me put in the police reports, let me put on a witness, let me put on the defendant himself to say, yeah, this is how it actually happened, this was the same occasion. If we're still in the pre-wooden framework for how we prove, that's how the court has done it. Only when the Shepard documents show the same day has the court said the government didn't carry its burden and it never shifted to the defendant to come forward with additional evidence. And, of course, again, Mr. Alcantara— Okay, so let's—so just because we don't yet know what we will decide on this, let's just for the moment assume arguendo, we do remand it back. What about Shepard do you—what about Shepard and then Wooden, do you claim shows you could do more than just put in Shepard documents to show that this wasn't the same day, that this wasn't the 1159 to 1201? Thank you, Your Honor. I think that what Wooden did was it completely recasted what different occasions mean and it did it in such a way—once we read what Wooden says in its deep analysis of what exactly happened—ten, one to another to another to another—it didn't just simply say, well, let's look at the Shepard document. After we see how they wrote Wooden and what it means, it's completely unsurprising that they never cited Shepard. They never said, well, what you do is you go to the Shepard documents and you look at it. Because what they were doing was not just a little bit diverging from a categorical approach, they were saying this is not a categorical approach. The government took to Wooden, to the Supreme Court, sort of a categorical, elemental approach. And the Court said, no, it's not that. Instead, it's a deeper, multi-factored, holistic, straight— You're saying Shepard wasn't overruled, it was simply not part of this bucket? Absolutely. It was answered—Shepard answered an entirely different question. Tell me—I don't care—this is Shepard—I don't care what the defendant actually did. I only care what was necessarily proved and show me what offense. Did he break into a house or did he break into a car? So he murdered 10 people but was only convicted of a burglary, then it's just a burglary. Absolutely. Because that's all that the Shepard documents show. Absolutely. Now, contrast to Wooden, where they're like, I mean, it kind of doesn't matter what he's proved. Tell me what happened. That's starkly different. Where the Court used words like holistic, multi-factored, straightforward and intuitive, I think these are words that I've never heard used to describe a categorical approach, quite the opposite. And so it's not as though Wooden kind of tweaked with a categorical approach, Wooden rejected a categorical approach altogether. And so I think that's what animates my argument, is to say, we're not confined to Shepard documents. But again, even if we are, and even if we are using the pre-Wooden framework for how we prove different occasions under the Barlow burden, we've met that here. So Shepard would instruct as to the minimum in terms of documents, but Wooden would provide a vehicle to, or an invitation to present all evidence pertinent to the question of the number of prior convictions. I believe that's correct. And I do want to say, just so there's no mistake about it, I mean, I believe I certainly am not the decision maker. That would surprise no one. But I think the Court's aware of the Department's position now after Wooden is that this different occasions is an element of an offense, has to be proved to a jury beyond a reasonable doubt, and that's the Government's position. But there are two reasons, and I want to disclose that in canter to the Court and make sure that we understand that. But there are two reasons that doesn't really matter here. First is that this Court has said that that position is foreclosed, and most recently, well, in Valencia, the Court said that's foreclosed. And so we're not really talking about that here in this case. But more importantly, it's because it's been waived. I noted in the brief, even before Valencia, when that might have been an open issue, that he raised no Sixth Amendment issue in the District Court. He raised no Sixth Amendment issue in his briefing. That is waived. And so to some degree, I think Valencia makes it a bit easier. The Court doesn't have to grapple. It certainly doesn't grapple at all with the Sixth Amendment issue. But it doesn't have to grapple at all really in this particular case with are we confined to Shepard documents or not, because even if we are, we still prevail. And I would submit that I may be back before the Court in months ahead where I have Shepard documents that show the same day, in which we do have to reach that. But again, under this Court's Barlow burden, showing different days, and trying to show different occasions, we do not have, I have not found any case where the Court has put on the government a burden to conclusively disprove the possibility of the same occasion. Now, there are . . . But a preponderance of the evidence is 50 plus a little bit. So if everything is totally even, the person who has the burden of proof loses. Okay? Because I did a lot of civil district judge, and whoever had the burden of proof had to get the preponderance, which meant if it was right here, then the other side won. So, why don't you have the burden of proving that these really are separate days, as opposed to just simply, you know, 15 and 16, as we've discussed at length, can be the same night? Well, a couple of responses, Your Honor. One, out of the 48 hours that occupy those two days, I think as a matter of just probabilities, that they would have, that Offense A would have occurred in the 24th hour, and Offense B would have occurred in the 25th hour, is very, very minuscule. So I think you have that. And, as I said before, I understand Your Honor, you know, issue with what a layperson would say, but when we're proving, you know, facts, and wouldn't itself, Justice Kagan pointed out that, look, when we're talking about different occasions, we're using, like, normal, what people say. And I can't remember her, you know, a business person, even a lawyer, would think different occasions mean, like, two different events. And so, as I'd said before, if I said, you know, somebody told me I got in a bar fight Tuesday night, I got in a bar fight Wednesday night, there's the problem. So you got in two bar fights. Then, under the Barlow burden, it goes to him to say, oh, no, no, no, no, no, let me clarify. I got in one fight, it just lasted a really long time. That's, we would never think by preponderance, oh, I can't be sure whether, or I can't even know, guess, whether you got in one or two. I see that my time is up, Your Rebuttal. So, the government, I think, makes too, far too much of these different dates on these indictments. There is nothing to say that the May 12th burglaries occurred in a shorter amount of time than the 15th and 16th. I think we've belabored this point. But there is no reason to treat the May 12th burglaries any different from the 15th and 16th, just because there's a five... So what about the argument that it meets the preponderance of the evidence? Okay, April 15th is a different day from April 16th. All right. Now, if you got something to show that, oh, it was all at one party and you're burglarizing around the party or something, you can do that. Right. Probably isn't enough, even though that's how you say more likely than not. This court has routinely held that the Shepard documents have to conclusively prove different occasions. Even in Owens, the issue there was location. Of course, we were still under the simultaneous versus sequential test in that case, and the indictments showed different owners of the habitations. And the court said, even though these ostensibly were probably separate locations, we don't know that for a fact. We don't know the relativity of these two locations. So it could have happened simultaneously under the Texas law of parties. So it doesn't matter if we think that probably these were committed at different locations and times, such that they would be different locations. If the Shepard documents do not conclusively prove that they were committed on different locations, then the government cannot rely on them to prove that enhancement. I want to briefly address the Barlow burden. Of course, in this burden-shifting regime, the court or the government has to first prove for ponderance of the evidence before it shifts the burden back on the defendant. And the court found that the government didn't do that in Owens. And I think it's the same situation here. And I just want to also go back to Woodin and say that the court did not reject a categorical approach in Woodin. It was not speaking about violent felony. It was not speaking about the definition of a serious drug offense, which is where we typically talk about a categorical approach. And it defies logic and is slightly absurd to say that Congress asked the district courts to, in one instance, only stick to police reports to decide the occasions question. That's clearly not what Congress intended. And the point of Shepard, of course, it mentions the Sixth Amendment jurisprudence about jury trial rights, but it wasn't decided on that point. Shepard was about avoiding collateral trials and re-litigating and diving into decades-old convictions the same way that that would apply here. So I also wanted to address the Stearns case. But those were talking about sort of what was the burglary. So when the state law is kind of multitudinal and some of it would be a burglary under federal law, some would not, and so on and so forth, then that's what you're kind of looking at. Where here, this is simply looking at were these the same address, for example. Why wouldn't that be something they could put on evidence of? I think it matters because Shepard was focused on what did the defendant necessarily admit during those pleas or trials? Or what did the jury find? Here, Mr. Al-Qaqqani could have been charged with a May 14th and a May 16th or 17th, and he may not have fought back before he pled guilty. So I think Shepard is really about what was necessarily admitted, and it's about not going back and re-litigating those things. So I think it extends to the occasions inquiry. And for those reasons, if you have another question, I'm happy to address it. I think we're good. Thank you very much. Thank you. Appreciate your honor's sides. And the case is now under submission.